UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUSID MUSLEH,

              Plaintiff,                           Case No. 17-cv-14126

                                              Paul D. Borman
v.                                            United States District Judge

AMERICAN STEAMSHIP
COMPANY,

              Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT
## AMERICAN STEAMSHIP'S MOTION TO DISMISS (ECF NO. 5)

This action involves Plaintiff's claims for damages allegedly resulting from an injury suffered aboard the M/V St. Clair on December 26, 2014, while Plaintiff was in the service of the vessel's owner, Defendant American Steamship Company ("ASC"). On September 8, 2017, this Court granted ASC's motion for summary judgment in a previous action between these same parties, regarding damages allegedly related to this same injury. *Musleh v. American Steamship Co*., No. 15-cv-13252, 2017 WL 3966576 (E.D. Mich. Sept. 8, 2017) ("*Musleh I*"). Thereafter, Plaintiff filed this second Complaint; same parties, same incident. ("*Musleh II*"). ASC now moves for dismissal in this action, arguing that Plaintiff's claims in this action

1

are barred by principles of *res judicata* and collateral estoppel. The matter is fully briefed and the Court held a hearing on April 25, 2018. For the reasons that follow, the Court GRANTS ASC's motion to dismiss.

## I.  FACTUAL BACKGROUND

On December 26, 2014, Plaintiff injured his shoulder and thumb while working for ASC as a seaman aboard the M/V St. Clair. (ECF No. 9-2, Pl.'s Resp. Ex. A, March 24, 2016 Deposition of Ahmed Musleh taken in *Musleh I*, at 12:22-23, 39:16:-40:3.)[1] Plaintiff received medication and monthly injections in his shoulder for pain for some period of time along with physical therapy, and was declared fit for duty ("FFD") and able to return to work with no restrictions on June 16, 2015. (*Id.* at

---

[1] In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted). Accordingly, this Court may consider documents filed in the previous litigation before this Court between these parties including the Plaintiff's deposition, which Plaintiff attaches to its Response to Defendant's motion to dismiss in this action. "[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010). "[I]t is clear that a court may take judicial notice of its own record of another case between the same parties." *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 441 (6th Cir. 1981).

13:22-14:1, 40:4-44:17.)  It is not disputed that "Plaintiff received [from ASC] maintenance and cure benefits throughout the six month period" that he was recovering from his injury and not fit for duty. *Musleh I*, 2017 WL 3966576, at * 7.

After being declared FFD, Plaintiff attempted to return to work for ASC, but was deemed not qualified to return to work on an ASC vessel because he failed to obtain a Vessel Personnel and Designated Security Duties ("VPDSD") certificate. *Musleh I*, 2017 WL 3966576, at *1.  In the previous action between these parties, in addition to seeking benefits for maintenance and contractual support, Plaintiff sought unearned wages for the time period following ASC's refusal to rehire him based upon the lack of a VPDSD certificate.  This Court determined that Plaintiff's entitlement to unearned wages ceased when Plaintiff's voyage aboard the M/V St. Clair ended on December 26, 2014, the date on which his voyage for ASC ended (also coincidentally the date on which Plaintiff suffered his injury.)  *Musleh I*, 2017 WL 3966576, at *6 ("Although ASC continued to provide Plaintiff with maintenance and cure payments up until he was rendered FFD and ready to return to work, the law is clear that Plaintiff was no longer entitled to unearned wages once his last voyage for ASC, *i.e.* the voyage on which he was injured, had ended.")

Plaintiff's complaint in *Musleh I* contained two counts – one for unearned wages and one for maintenance and "contractual support" benefits.  The complaint in

*Musleh I* did not contain a claim against ASC under the Jones Act for negligence or for unseaworthiness, claims that are set forth in Counts I and II of the Complaint in this action. In fact, at Plaintiff's deposition in *Musleh I*, counsel for both parties discussed the fact that Plaintiff was not bringing a Jones Act claim for negligence in that action at that time:

> Mr. Galea: I guess the first thing is, before we get started, so that we can try to narrow the focus of this deposition, it's my understanding that the lawsuit in this particular case, and the claim being made, is not so much to seek the damages arising as a result of the incident of December 26, 2014, but more what transpired as a result of the requirement, or whatever, for the vessel personnel designated securities duties endorsement, the VPDSD, and not to seek recovery for damages for the December 26, 2014, incident?
>
> Mr. Fishback: Yes. On behalf of Mr. Musleh, that is correct.
>
> And we had a brief conversation this morning, and I thought just to add to the understanding, I think, obviously, the Complaint speaks for itself. There is no claim asserted for a Jones Act or seaworthiness at this time.
>
> And certainly, if that were to become relevant at a later time, we'd agree to present Mr. Musleh, and you can question him, whatever.

(Pl.'s Dep. 5:8-6:9.) Plaintiff never deemed any potential negligence or seaworthiness claims relevant as *Musleh I* moved forward and proceeded to closure on the unearned wages and maintenance claims. On September 8, 2017, the Court denied Plaintiff's claims for unearned wages and maintenance benefits, 2017 WL 3966576, at *10, and on December 21, 2017, Plaintiff filed this second lawsuit relating to the same

December 26, 2014 incident.

Defendant now moves to dismiss this action, arguing that Counts I and II, for negligence and seaworthiness respectively, arise out of the same December 26, 2014 injury that formed the basis for the claims in the prior case and therefore could and should have been brought in the prior litigation. Defendant also argues that the issues presented in Count III of the Complaint in this case, for maintenance and cure, were expressly decided in that prior proceeding.

Plaintiff responds that *Musleh I* was an action filed for "the limited purpose of litigating [Plaintiff's] claim for unearned wages" and that ASC acknowledged this limited purpose and therefore is now estopped from asserting the defense of *res judicata*. Plaintiff also asserts that the claim for cure in this case is different from the claim asserted in the previous action because his condition resulting from the December 26, 2014 injury has worsened.

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6) a court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The court "need not accept as true

a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal quotation marks and citations omitted). *See also Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555 (internal quotation marks and citations omitted) (alteration in original). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678." Thus, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the

defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental

agencies."); *Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III. ANALYSIS

### A. Federal Law of Res Judicata

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). *See also* Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). This is true whether subject matter jurisdiction in the prior action was based on a federal question or diversity. *See, e.g., EB-Bran Productions v. Warner*, 242 F. App'x 311, 312 (6th Cir. 2007) (noting that "a federal court applies federal law in determining the preclusive effect of a prior federal judgment" and observing that this rule has been applied in the Sixth Circuit

whether the prior litigation was based on federal question or diversity) (citing *J.Z.G Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213 (6th Cir. 1996)).

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Sturgell*, 553 U.S. at 892. For purposes of clarity, it is important to note the distinction:

> The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion. The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action.

*J.Z.G. Resources,* 84 F.3d at 214 (emphasis in original).

"'[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)). "The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chemical Co., Inc.*

*v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

The parties here do not dispute the first two elements as this Court's summary judgment ruling in *Musleh I* was a decision on the merits and involved the identical parties. Our focus is on the third and fourth elements of the res judicata test. The third element, whether the claims in this action could or should have been asserted in *Musleh I*, asks whether the "two causes of action arise from the 'same transaction, or series of transactions,'" and if so then "the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder v. City of Cleveland*, 287 F. App'x 468, 471 (6th Cir. 2008) (quoting *Rawe*, 462 F.3d at 529)). "The fact that [Plaintiff] now asserts alternative theories of recovery and seeks a different remedy does not allow [him] to avoid claim preclusion, when those other theories could have been asserted and remedies could have been sought in the earlier action." *Rawe*, 462 F.3d at 529 (internal quotation marks and citation omitted). *See also Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978) ("Where two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.").

The fourth element requires "'an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder*, 287 F. App'x at 471

(quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "The final element of res judicata-that there be an "identity of claims"-is satisfied if the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002) (alteration added). "The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split." Restatement (Second) of Judgments § 24 (cmt. a) (1982) (June 2018 Update).

Plaintiff's challenge relates principally to the fourth element, identity of claims, which Plaintiff interprets to mean that if the subsequent suit requires the submission of different evidence to sustain the claim, then res judicata does not apply to the subsequent suit. But, as discussed further *infra*, it is well established that the rule of res judicata "applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action . . . [t]o present evidence or grounds or theories of the case not presented in the first action . . . ." Restatement

(Second) Judgments § 25 (introductory comment). "[R]es judicata extinguishes all claims arising out of the same transaction or series of transactions. As such, a plaintiff is pressured to present all material relevant to the claim in one action, including any and all theories even where those theories are based on different substantive grounds." *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (quoting Restatement (Second) of Judgments § 25, cmt. d)).

### B. The Elements of Plaintiff's Claims Here and in *Musleh I*

Plaintiff filed a two-count complaint in *Musleh I* – Count I for unearned wages and Count II for maintenance and support benefits. The parties' summary judgment arguments focused on the count for unearned wages, which was a dispute regarding whether Plaintiff had the necessary certification to return to work after he was declared FFD following his injury. Plaintiff alleged that ASC wrongfully refused to allow Plaintiff return to work after he was declared FFD following his December 26, 2014 injury and therefore Plaintiff sought unearned wages from the date that Plaintiff was declared FFD (June 16, 2015) to the present. The Court disagreed and found that as a matter of law Plaintiff's entitlement to unearned wages ceased when he finished the voyage he was on for ASC at the time of the injury. Coincidentally, that voyage ended on December 26, 2014, the date that Plaintiff suffered the injury. The fact of Plaintiff's injury while in the service of the ship, a critical element of both of his

claims in *Musleh I*, was necessarily decided in *Musleh I* and the parties did exchange discovery regarding the nature of Plaintiff's injury and his medical expenses up until the date on which he was declared FFD. Several pages of Plaintiff's deposition in *Musleh I* were devoted to a discussion of the treatment, medication, and physical therapy that Plaintiff had received for the injury he suffered on December 26, 2014, and several medical professionals were listed by Plaintiff on his witness list in *Musleh I*. (Pl.'s Resp. Ex. A, Pl.'s 3/24/16 Dep. 38:13-46:8, 72:10-74:22.) This Court held that ASC had paid Plaintiff all maintenance and cure benefits that were due him up through the date on which he was declared FFD. *Musleh I*, 2017 WL 3966576, at * 6 n. 2. Summary judgment was entered in favor of ASC on both Counts I and II. Plaintiff did not appeal the decision in *Musleh I.*

Plaintiff has now filed a three Count Complaint based upon the same December 26, 2014 injury – Count I under the Jones Act for negligence, Count II under general maritime law for unseaworthiness and Count III, also under general maritime law, for maintenance and cure. The elements of these claims will be discussed in turn, starting with the last Count first.

"[M]aintenance and cure is an independent claim that is not contingent upon being able to recover for negligence under the Jones Act or a violation of the duty to provide a seaworthy vessel." *West v. Midland Enterprises, Inc.*, 227 F.3d 613, 616

(6th Cir. 2000). "To recover for maintenance and cure, a plaintiff need show only that (1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *Id.* "The right to recover for maintenance and cure is broad and the burden of proof is . . . relatively light since recovery is not dependent on the negligence or fault of the vessel or its owner." *Id.* (internal quotation marks and citation omitted).

"There are generally three separate items of recovery in an action for maintenance and cure." *Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 914 (2d Cir. 1960). "The first of these is maintenance, a living allowance sufficient to enable the seaman to maintain himself in a manner comparable to that which he received aboard his ship." *Id.* "The second item is cure, which relates to expenses for medical treatment," coverage for which "extends only until the patient reaches the point of Maximum recovery." *Id.* at 914-15. "The final item of recovery" available as part of a claim for maintenance and cure "comprises wages until the 'end of the voyage' the seaman was on when he was incapacitated." *Id.* at 915. This "package of benefits" is unique to admiralty law:

> Rather than relying upon the protection of workers' compensation statutes, seamen who suffer illness or injury on the job look to a unique package of remedies. Due to historical tradition and the realization that

seaman are required to endure special perils and hardships, federal common law of the sea accords seaman special relief not available to other workers, including maintenance, cure, and unearned wages. Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention.

*Midland Enterprises*, 227 F.3d at 616 (quoting *Blainey v. American Steamship Co.*, 990 F.2d 885, 886-87 (6th Cir. 1993)).

In addition to damages available for maintenance and cure under general maritime law, "'[t]he Jones Act permits any seaman who suffers personal injuries in the course of his employment or the personal representative of a deceased seaman to sue his employer at law for damages in a federal district court, without invoking admiralty jurisdiction.'" *Petersen v. Chesapeake and Ohio Ry. Co*., 784 F.2d 732, 736 (6th Cir. 1986) (quoting 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3677 (1984)). "The essential elements under a Jones Act claim seeking recovery for injury to a seaman are: (1) negligence by the employer; and (2) a causal relationship between the negligence and the injury." *Alrayashi v. Rouge Steel Co*., 702 F. Supp. 1334, 1336 (E.D. Mich. 1989). "The standards establishing negligence and causation under the Jones Act are somewhat lower than in tort actions at common law. A seaman need only prove slight negligence by his employer." *Id*. (citing *Petersen*, 784 F.2d at 740). "Similarly, the test for causation under the Jones Act is

not the strict measure of proximate cause but a more lenient measure of legal cause." *Id*. at 1336-37.

"An unseaworthiness claim under maritime common law is separate from a Jones Act negligence claim." *Vandekreeke v. USS Great Lakes Fleet, Inc.*, 172 F. Supp. 2d 907, 912 (E.D. Mich. 2001) (citing *Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 595 (6th Cir. 1998)). "Specifically, the salient differences between the two are 'the applicable standard of liability, and the applicable standard of causation.'" *Id*. (quoting *Szymanski*, 154 F.3d at 595). "General maritime law imposes a duty upon shipowners to provide a seaworthy vessel that is independent from the duty to provide a reasonably safe workplace imposed by the Jones Act." *Alrayashi*, 702 F. Supp. at 1337. "The duty to provide a seaworthy vessel requires a shipowner to furnish a vessel and appertenances reasonably fit for their intended use. The standard is reasonable fitness, not perfection." *Id*. "Unlike a claim under the Jones Act, where a finding of negligence is necessary, the source of the malfunction is irrelevant to an unseaworthiness claim. [U]nseaworthiness is a condition, and how that condition came into being—where by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 602 n. 6 (6th Cir. 2001) (internal quotation marks and citation omitted). "[D]espite their other differences, the two causes of action are

uniform in the injuries they reach. Where an injury is not remediable under the Jones Act . . . neither can the doctrine of unseaworthiness offer redress." *Szymanski*, 154 F.3d at 595.

### C.    Res Judicata Bars Plaintiff's Claims in this Action

In *Musleh I*, this court decided that Plaintiff was not entitled to unearned wages as a result of his December 26, 2014 injury and decided that Plaintiff had received all of the maintenance and cure benefits to which he was entitled as a result of that injury. In resolving these claims, the Court necessarily found that Plaintiff was a seaman, and that he was injured in the course and scope of his employment for ASC on December 26, 2014. Plaintiff argues in opposition to Defendant's motion, and it is evident, that the essential elements of his Jones Act claim, notably whether ASC was negligent and whether this negligence was the proximate cause of Plaintiff's injury, as well as essential elements of his unseaworthiness claim, notably whether the M/V St. Clair was reasonably fit for its intended use and, if not, then whether such unseaworthiness was the substantial and direct or proximate cause of the plaintiff's injuries, were not the subject of discovery or argument in *Musleh I*. Plaintiff suggests that because this additional evidence will be essential here and was not essential to resolution of the claims presented in *Musleh I*, res judicata does not bar this action. But the res judicata analysis is more exacting than this.

As discussed above, the parties do not dispute the first and second elements of the res judicata analysis – *Musleh I* resulted in a final judgment on the merits and the parties are identical. And Plaintiff puts up minimal resistance with regard to the third factor – Jones Act and unseaworthiness claims are frequently litigated together with claims for unearned wages and maintenance and cure. "It has long been settled that a seaman is not required to elect between a claim for maintenance and cure and a claim for negligence under the Jones Act." *Bartholomew*, 279 F.2d at 915. Indeed, in this case, the Plaintiff clarified that he was not, at the time of Plaintiff's deposition in *Musleh I*, asserting a Jones Act or unseaworthiness, suggesting that such a tack was noteworthy because such claims are typically asserted in the same action where they arise, as they do here, out of the same maritime accident and injury. In fact, as discussed *supra*, in the course of Plaintiff's deposition in *Musleh I*, Plaintiff's counsel expressly left the door open to asserting such a claim in *Musleh I* "if it became relevant," in which case, Plaintiff's counsel represented on the record, Mr. Musleh was prepared to sit for a second deposition in *Musleh I* to address the issues relevant those then-unasserted claims. And at oral argument in this action, Plaintiff's counsel conceded that the claims asserted in this action absolutely could have been asserted in *Musleh I*. Thus there is little argument that the claims asserted here could have been litigated in the prior action, and if Plaintiff had amended his complaint, Plaintiff

would have continued his deposition.

The real dispute here focuses on the fourth element – whether there is "an identity of the causes of action" in *Musleh I* and here. The parties agree that this element requires a finding of "an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder*, 287 F. App'x at 471. The Sixth Circuit has held that this element will be satisfied "if the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning*, 283 F.3d at 774-75. As the Restatement (Second) of Judgments instructs, the "trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff . . . The transaction is the basis of the litigative unit or entity which may not be split." Restatement (Second) of Judgments § 24 (cmt. a). Here, ASC argues, the "transaction" is the December 26, 2014 injury, and all claims and theories of recovery stem from that single event. In *Cemer*, *supra*, for example, the Sixth Circuit held that a final judgment in plaintiff's age discrimination suit was res judicata to a subsequently-filed breach of contract suit based upon the same termination. 583 F.2d at 832 . In *Holder*, *supra*, the Sixth Circuit applied the rule established in *Cemer* to foreclose a second Title VII suit by an African American woman based on race and

gender discrimination when the plaintiff had previously unsuccessfully challenged the same employment practice on the basis of gender under the Equal Pay Act. The Court noted the applicability of the test under analysis here, i.e. that "in order for the third and fourth elements [of res judicata] to be satisfied, 'there must be an identity of the causes of action that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" 287 F. App'x at 470 (quoting *Westwood Chemical*, 656 F.2d at 1227). The Sixth Circuit further noted that "[w]here the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Id*. (citing *Rawe*, 462 F.3d at 529). The Sixth Circuit held that "disparity in pay" was at the heart of both the Equal Pay Act claims and discrimination claims and that only plaintiff's legal theory changed between her first and second suits, a direct subversion of the principles of res judicata as established in *Cemer*:

> Holder first argues that her race and gender pay discrimination suits arise from different facts and therefore do not possess "an identity of the causes of action" required for res judicata to apply. However, both Holder I and II actually arise from the same facts (disparate pay); it is the legal theory of her claims that differ. The district court correctly noted that the "only discernable difference between the facts of [both cases] is that in her [current] Complaint she specifically seeks to compare her pay to two particular white female employees and her claims are all race based. [Both cases] involve the same employment, same supervisor and

> the same circumstances. . . . Even though Holder was aware of a possible racial disparity when filing *Holder I*, she chose only to pursue her gender-based discrimination theories in her first suit. She cannot now subvert the principles of res judicata by filing yet another lawsuit on the same facts, basing that suit solely on claims of racial discrimination.

287 F. App'x at 471 (citing *Cemer*, 583 F.2d at 832). Clearly additional evidence, beyond that which would have been essential to Holder's gender-based Equal Pay Act claim, would have been essential in the subsequent Title VII race discrimination action. But because both claims arose out of the same set of operative facts related to an alleged disparity in pay, involving "the same employment, same supervisor and the same circumstances," there was sufficient identity of claims and her Title VII claims could and should have been brought in the first action. *Id*. at 471.

Likewise, in *Venture Global Engineering, LLC v. Satyam Computer Servs. Ltd*., No. 10-cv-15142, 2012 WL 12897904 (E.D. Mich. 2012), the court held that contract-based claims presented and finally determined in an arbitration proceeding were res judicata with respect to subsequently-filed fraud and misrepresentation claims where both actions arose generally from "the formation and operation of the joint venture." *Id*. at *7. The court rejected plaintiff's argument that identity of claims did not exist because evidence of fraud and misrepresentation was not presented at the arbitration proceeding:

> The requirement that there be an "identity of the causes of action" "is

satisfied if 'the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts.'" *Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002) (quoting *In re Micro-Time Mgmt. Sys., Inc.*, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir. Jan. 12, 1993) (table decision)). Plaintiffs contend that an "identity of the causes of action" does not exist because "the only issues presented to the arbitrator in the prior action were contract-related," [] and "[n]owhere does the arbitrator discuss allegations of fraud or of misrepresentations relating to Satyam's business model or its financial stability," []. The mere fact that the parties asserted contract-based claims in the arbitration proceeding, however, does not necessarily establish that an "identity of the causes of action" does not exist. The Sixth Circuit has observed that "[claim preclusion] extinguishes all claims arising out of the same transaction o[r] series of transactions. As such, a plaintiff is pressured to present all material relevant to the claim in one action, including any and all theories of the case even where those theories are based on different substantive grounds." *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (citing Restatement (Second) of Judgments §§ 24, 25 cmt. a, d) (emphasis added).

2012 WL 12897904, at *7-9 (record citations omitted).

Here all of Plaintiff's claims in both *Musleh I* and this action arise out of the same December 26, 2014 accident and injury and Plaintiff concedes that the claims asserted here could have been, and typically would have been, asserted in *Musleh I*. Indeed, Plaintiff's counsel announced during Plaintiff's deposition in *Musleh I* that he reserved the right to assert the claims asserted here in that prior action, presumably by way of amendment to the pleadings, "if they became relevant," which apparently they did not – until Plaintiff did not prevail on his "novel" unearned wages claim. But

Plaintiff cannot split his claims in this fashion – he cannot control the scope of the res judicata bar by electing to limit his claims, and accordingly limit discovery and argument, to a discrete theory of recovery, then wait to see how that theory is received, and only after losing on that theory, file a second lawsuit arising out the very same accident and injury, alleging different theories of recovery that admittedly could have been asserted in the first proceeding. "The Sixth Circuit has observed that "[claim preclusion] extinguishes all claims arising out of the same transaction o[r] series of transactions. As such, a plaintiff is pressured to present all material relevant to the claim in one action, including any and all theories of the case even where those theories are based on different substantive grounds." *Venture Global*, 2012 WL 12897904, at *7 (quoting *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (citing Restatement (Second) of Judgments §§ 24, 25 cmt. a, d)). Plaintiff failed to do so here and the claims asserted in this action are barred by res judicata.

## IV. CONCLUSION

"The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chemical*, 656 F.2d at 1227. Those purposes are served here by the Court's application of res judicata to bar Plaintiff's claims in this successive maritime action.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 9)

23

and DISMISSES this action WITH PREJUDICE.

IT IS SO ORDERED.


                        s/Paul D. Borman
                        PAUL D. BORMAN
                        UNITED STATES DISTRICT JUDGE

Dated:  July 2, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 2, 2018.


                        s/Deborah Tofil
                        Case Manager